# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| JEREMY BAUER,<br><br>        Plaintiff,<br><br>vs.<br><br>JACOB GLASER,<br><br>        Defendant. | 4:16-CV-04055-KES<br><br><br>ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO AMEND |

Plaintiff, Jeremy Bauer, is an inmate at the South Dakota State Penitentiary (SDSP) in Sioux Falls. He filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Currently pending are a motion for summary judgment filed by Bauer, a motion for summary judgment filed by defendant, Jacob Glaser, and a motion to amend filed by Bauer. Dockets 40, 47, 56. For the reasons stated below, the court denies Bauer's motion for summary judgment, denies Bauer's motion to amend, and grants Glaser's motion for summary judgment.

## FACTUAL BACKGROUND[1]

On May 24, 2013, Bauer was sentenced to thirty years at the SDSP following his state court conviction for first degree rape. Docket 49 ¶¶ 1-2; Docket 49-6 at 1. On June 6, 2013, Bauer appealed his conviction to the South

---

[1] The court draws the facts from the pleadings, the parties' statements of undisputed material facts, the proposed-amended complaint, and other documents submitted as part of the record. Where the facts are disputed, both parties' averments are included.

Dakota Supreme Court. Docket 49 ¶¶ 1-2; Docket 49-6 at 1. The South Dakota

Supreme Court affirmed Bauer's conviction on July 16, 2014. Docket 49 ¶ 2;

*see also State v. Bauer*, 851 N.W.2d 711 (S.D. 2014).

On May 8, 2015, Bauer filed a petition for habeas corpus in state court.

Docket 49 ¶ 3; Docket 49-6 at 1. A state circuit court judge denied Bauer's

habeas petition on September 21, 2015. Docket 49 ¶ 3; Docket 49-6 at 1. The

circuit court judge also declined to issue Bauer a certificate of probable cause,

finding that no appealable issues existed. Docket 49 ¶ 3; Docket 49-6 at 23.

Under SDCL § 21-27-18.1, Bauer had twenty days following the circuit court

judge's refusal to issue a certificate of probable cause to file a separate motion

for the issuance of a certificate of probable cause with the South Dakota

Supreme Court. Docket 49 ¶ 4 (citing SDCL § 21-27-18.1).

The SDSP mailroom received the circuit court judge's order denying

Bauer's habeas petition on September 23, 2015. Docket 1 at 5. On September

26, 2015, Jacob Glaser, the Unit Coordinator (UC) in charge of delivering legal

mail to inmates and assigning inmate jobs, delivered the circuit court's order to

Bauer. *Id.* at 5-6. According to Bauer's proposed amended complaint, Bauer

should have received the circuit court judge's order from Glaser no later than

on September 24, 2015. Docket 56-1 ¶ 11. Glaser contends that he attempted

to page Bauer multiple times to pick up his mail but that Bauer did not pick

up his mail until September 26, 2015. Docket 14 ¶ 7; Docket 56-1 ¶ 12.

After receiving the circuit court's denial of his habeas petition, Bauer

prepared a motion for certificate of probable cause and a motion to appoint

counsel that he intended to submit to the South Dakota Supreme Court. Docket 42 ¶ 4. Bauer had these legal documents notarized on October 5, 2015, and made eight copies of the documents. *Id.* ¶ 5. According to Bauer, he delivered eight pieces of legal mail—one addressed to the South Dakota Attorney General, one addressed to the Pennington County State's Attorney, and six addressed to the South Dakota Supreme Court—to Glaser for mailing on October 6, 2015. *Id.* ¶¶ 4-7. Glaser argues that Bauer delivered only the legal mail addressed to the South Dakota Attorney General and to the Pennington County State's Attorney on October 6, 2015. Docket 49 ¶ 12. The six pieces of legal mail addressed to the South Dakota Supreme Court, according to Glaser, were not delivered to Glaser for mailing until October 7, 2015. *Id.* ¶ 13.

Also on October 7, 2015, Glaser called Bauer into his office to notify Bauer that in order to send his legal mail, Bauer would have to execute a money transfer order to pay for the postage of four of the letters addressed to the South Dakota Supreme Court.[2] Docket 42 ¶ 7; Docket 49 ¶ 14. Bauer

_____

[2] Glaser notes that under South Dakota Department of Corrections (DOC) Inmate Correspondence Policy 1.5.D.3(IV)(6)(F) ("DOC Mail Policy"), each inmate is allowed to send up to five letters per week with state-paid postage for a maximum postage total of $10 per month. Docket 49 ¶ 7; Docket 49-8 (DOC Mail Policy). According to affidavits submitted, once an inmate's monthly postage for legal mail exceeds the $10 limit, SDSP mailroom staff return the legal mail to the prisoner's unit coordinator (UC) with a letter explaining the amount of postage due. Docket 52 ¶ 8. The prisoner's UC then approaches the prisoner to see if the prisoner is willing to execute a money transfer order to pay for the remaining postage. Docket 50 ¶¶ 8-9. If the prisoner signs the money transfer order, the UC also signs the form, notes the inmate's current account balance on the form, and returns both the legal mail and the form to the mailroom for mailing. *Id.* ¶ 9. Once the mailroom staff receive the signed

3

signed the money transfer order that same day, which authorized the prison to take $11.84 out of his prisoner trust account to pay for the postage on his legal mail. Docket 42 ¶ 8; Docket 49 ¶ 14. Upon receipt of the money transfer order, Bauer's remaining legal mail was processed and posted on October 8, 2015. Docket 49 ¶ 15.

Bauer alleges that DOC Mail Policy states that outgoing "privileged/legal mail is not required to have the postage attached." Docket 42 ¶ 10 (quoting DOC Mail Policy 1.5.D.3(IV)(6)(A)). Bauer further alleges that under the DOC's Mail Policy, the documents he submitted for mailing qualify as legal mail. *Id.* ¶ 11. Glaser does not disagree that under DOC Mail Policy 1.5.D.3(IV)(6)(A), Bauer was not required to attach postage to his outgoing legal mail or that the documents sent here qualified as "legal mail" under the policy. *See* Docket 53 ¶¶ 10-11. Glaser argues, however, that under the DOC's Mail Policy, prisoners at the SDSP are not entitled to unlimited free legal mail. Docket 49 ¶ 7.

According to Bauer's calculations, the motion for a certificate of probable cause that he delivered to Glaser on October 6, 2015, was not due to the South Dakota Supreme Court until October 14, 2015, at the earliest. Docket 1 at 8-9. The South Dakota Supreme Court received Bauer's motion for a certificate of probable cause on October 13, 2015. Docket 42 ¶ 12. On October 20, 2015, in an order signed by Chief Justice David Gilbertson, the South Dakota Supreme Court dismissed Bauer's motion because it was filed twenty-two days after

---

money transfer order, the legal mail is logged in the prison's inmate mail log, postage is put on the legal mail, and the items are mailed. Docket 52 ¶ 8.

entry of the circuit court's order. Docket 42 ¶ 13; *see also* Docket 49-7 (copy of the South Dakota Supreme Court's order dismissing Bauer's motion for a certificate of probable cause).

Notwithstanding the twenty-day limit set forth under SDCL § 21-27-18.1 for Bauer to file his motion for a certificate of probable cause with the South Dakota Supreme Court, other state statutes impact the calculation of Bauer's twenty day period. Docket 49 ¶ 4. For example, under SDCL § 15-6-6(a),[3] September 21, 2015—the day the circuit court issued its order denying Bauer's habeas petition—is excluded from the computation of Bauer's twenty days. *Id.* (citing SDCL § 15-6-6(a)). Under this same statute, the last day of the computation is not included if that day falls on a Saturday, a Sunday, or a legal holiday. *Id.* (citing SDCL § 15-6-6(a)). Here, the twentieth day after, but including September 22, 2015, was Sunday, October 11, 2015. *Id.* Thus, under SDCL § 15-6-6(a), that day should have been excluded from computation when determining the timeliness of Bauer's motion. *See id.* (citing SDCL § 15-6-6(a)). The next day, Monday, October 12, 2015, also should have been excluded from

---

[3] In relevant part, SDCL § 15-6-6(a) provides:

> In computing any period of time prescribed or allowed by this chapter, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. . . . As used in this rule, "legal holiday" includes those holidays listed in § 1-5-1.

computation because it was Native American Day, a legal holiday under SDCL § 1-5-1. *Id.* Thus, Bauer's motion for a certificate of probable cause should have been due on Tuesday, October, 13, 2015, which is the day on which the South Dakota Supreme Court indicated it received the motion.[4] *Id.*

After receiving notice that the South Dakota Supreme Court denied his motion for a certificate of probable cause as being untimely filed, Bauer had an additional twenty-days to file a petition for reinstatement (referred to as a motion for reconsideration by the parties) of his motion with the South Dakota Supreme Court under SDCL § 15-26A-91. *See id.* ¶ 21; Docket 42 ¶ 19. The twentieth day after October 20, 2015, was November 9, 2015. Docket 49 ¶ 21.

According to Bauer, on November 16, 2015, he had notarized an affidavit in support of his motion for reconsideration and his proof of service for his motion for reconsideration. Docket 42 ¶ 14. That same day, Bauer delivered to Glaser a motion for reconsideration, a notarized affidavit in support, and a notarized proof of service, for mailing to the South Dakota Supreme Court, the Pennington County State's Attorney, and the South Dakota Attorney General. *Id.* ¶ 15. Consistent with the DOC's Mail Policy, the SDSP covered the postage for Bauer's mail to the South Dakota Supreme Court and to the South Dakota

---

[4] The South Dakota Supreme Court's order does not explain why it "counted" Monday, October 12, 2015, in calculating the due date for Bauer's motion for a certificate of probable cause. Given this anomaly, United States Magistrate Judge Veronica Duffy—in Bauer's § 2254 habeas proceeding—found that Bauer established "cause" for the procedural default of his state habeas claims. *See Bauer v. Dooley*, 5:15-CV-5089-JLV, Docket 11 at 25, (D.S.D. August 24, 2016).

Attorney General. Docket 49 ¶ 18. Bauer, also alleges that later on November 16, 2015, Glaser approached Bauer and required him to execute a money transfer order before processing the letter to the Pennington County State's Attorney. Docket 42 ¶ 16. Bauer contends that this money transfer order was not signed by Glaser until November 19, 2015, and that all of the legal mail he delivered to Glaser on November 16, 2015, was not actually delivered to the SDSP mail room until November 19, 2015. *Id.* ¶ 17.

Glaser does not disagree that Bauer executed a money transfer order on November 16, 2015, to send his mail to the Pennington County State's Attorney or that the SDSP covered the postage for the rest of Bauer's legal mail. Docket 49 ¶¶ 17-19. Glaser does disagree with Bauer's recollection of dates regarding when Bauer's mail was sent. First, Glaser states that he processed Bauer's legal mail on November 17, 2015. *Id.* ¶ 19. Second, Glaser contends that Bauer's mail was actually mailed on November 18, 2015, which is the day they are postmarked. *Id.* ¶ 20 (citing Docket 49-5).

On November 24, 2015, the Chief Deputy for the South Dakota Supreme Court sent Bauer a letter returning his motion for reconsideration, his affidavit in support, and his proof of service to him as unfiled under SDCL § 15-26A-91. Docket 42 ¶ 19; *see also* Docket 56-13 (copy of the South Dakota Supreme Court's letter). According to Bauer, under SDCL §§ 15-6-6(a) and (e), the due date for his motion to reconsider was November 23, 2015. Docket 42 ¶ 19.

## PROCEDURAL BACKGROUND

On April 20, 2016, Bauer filed a complaint alleging violations of his right of access to the courts and his rights under the Due Process and Equal Protection Clauses. Docket 1. The court screened Bauer's complaint and dismissed all defendants other than Glaser and all claims other than Bauer's access to the courts claims. Docket 9. Bauer has two access to the courts claims: (1) Glaser delayed sending Bauer's motion for certificate of probable cause to the South Dakota Supreme Court, and (2) Glaser delayed sending Bauer's motion to reconsider to the South Dakota Supreme Court. On August 10, 2016, Glaser moved for summary judgment, arguing that Bauer failed to exhaust his claims through the prison grievance system. Docket 16. In response, Bauer moved to amend his complaint. Docket 29. His first proposed amended complaint attempted to cure the deficiencies of his Equal Protection claim and responded to Glaser's motion for summary judgment. *Id.*

On February 1, 2017, the court denied Glaser's motion for summary judgment and denied Bauer's motion to amend. Docket 35. Specifically, the court concluded that Bauer properly exhausted his claims under the SDSP's grievance procedure. *Id.* at 8. The court denied Bauer's motion to amend because Bauer's proposed amendments were futile. *Id.* at 9. Also on February 1, 2017, the court lifted its stay on discovery in this case. Docket 36.

On March 2, 2017, Bauer moved for summary judgment. Docket 40. On March 29, 2017, the court granted Glaser's motion for a protective order and to stay discovery of this matter until the court determined the issue of

8

qualified immunity. Docket 46. Glaser filed his motion for summary judgment on April 7, 2017. Docket 47. In response, Bauer filed a second motion to amend his complaint on July 7, 2017. Docket 56. Bauer's second proposed amended complaint seeks to restate his former count one, add a claim for retaliation, and respond to Glaser's motion for summary judgment. *Id.*

## LEGAL STANDARDS

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quotation omitted).

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser–Busch, Inc.*,

87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

"A decision whether to allow a party to amend [his] complaint is left to the sound discretion of the district court . . . ." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citations omitted). "A party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Motions to amend should be freely given in order to promote justice but may be denied when such an amendment would be futile. *Plymouth Cty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

## DISCUSSION

### I. Motions for Summary Judgment

Both Bauer and Glaser move for summary judgment. Dockets 40 and 47. Because the court has stayed discovery in this matter until the issue of qualified immunity is determined, and because Glaser has moved for summary judgment, in part, on the basis of qualified immunity, the court must first

determine if Glaser is entitled to qualified immunity. If the court determines that Glaser is not entitled to qualified immunity, the court will address the substance of Bauer's motion for summary judgment. Before determining whether Glaser is entitled to qualified immunity, however, the court will address Bauer's official capacity claim against Glaser.

### A. Official Capacity Claim

Bauer sued Glaser in his official capacity. Docket 1 at 2. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. *Id.* While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66. The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.*

Here, as part of Bauer's requested remedy, he seeks to recover money damages. Docket 1 at 14. Consequently, because Bauer sued Glaser in his official capacity, Bauer has asserted a claim for money damages against the state of South Dakota. The state of South Dakota has not waived its sovereign immunity. Thus, the court finds that Glaser is protected by sovereign immunity and is entitled to judgment as a matter of law on Bauer's official capacity claim.

## B.  Individual Capacity Claims

Glaser contends that Bauer is barred from proceeding on his § 1983 claims because a judgment in Bauer's favor here would necessarily imply the invalidity of his underlying state court conviction. Thus, Glaser argues that Bauer's access to the courts claims are barred under the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). Glaser further argues that even if Bauer's claims are not barred by *Heck*, he is entitled to qualified immunity from Bauer's individual capacity claim.

### 1. Whether Bauer's Access to the Court Claims are *Heck* Barred

In *Heck v. Humphrey*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87. The *Heck* Court further observed that "[a] claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487 (emphasis in original). Thus, because Bauer's § 1983 claim here seeks damages from Glaser, the court must consider whether judgment in Bauer's favor "would necessarily imply the invalidity of his conviction or sentence[.]" *Id.* at 487.

Glaser argues that Bauer's § 1983 claim is barred by *Heck* because to rule in Bauer's favor would require the court to imply that Bauer's state court

conviction was invalid. Docket 48 at 8-9. Bauer did not respond to Glaser's argument that his access to the court claims are barred under *Heck*. Instead, Bauer moved to amend his complaint without addressing the applicability of *Heck*. *See* Docket 56.

The court agrees that Bauer's access to the court claims are *Heck* barred. As is clear from the record, Bauer's underlying criminal conviction has not been reversed on appeal or declared invalid by a state court. *See* Docket 49-6 (state circuit court order denying Bauer's habeas motion); Docket 49-7 (South Dakota Supreme Court order dismissing Bauer's motion seeking a certificate of probable cause). Nor has Bauer's conviction been "called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 487. In fact, when Bauer sought habeas relief through the federal courts under 28 U.S.C. § 2254, his claims were thoroughly analyzed by Magistrate Judge Duffy, who recommended dismissal of Bauer's habeas petition. *See Bauer v. Dooley*, 5:15-CV-5089-JLV, Docket 11 (D.S.D. August 24, 2016). The district court adopted the Magistrate Judge Duffy's report and recommendation and dismissed Bauer's habeas petition with prejudice. *Id.*, Docket 23, (D.S.D. March 6, 2017). Thus, because no court has overturned Bauer's conviction, declared it invalid, or called it into question by granting a writ of habeas corpus under 28 U.S.C. § 2254, Bauer cannot overcome *Heck's* favorable termination requirement. *See Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) (affirming the district court's grant of summary judgment because *Heck's* favorable termination rule barred Entzi's suit).

Further, not only has Bauer failed to show favorable termination of his underlying criminal conviction, but he has also failed to show how granting his requested relief would not necessarily imply that his underlying conviction is invalid. Although the Eighth Circuit has yet to address a case dealing with *Heck* in the context of an access to the courts claim, other circuits that have addressed this issue have concluded that *Heck* bars the maintenance of § 1983 actions where awarding an inmate requested damages would imply that the inmate's underlying conviction is invalid. *See Coulston v. Superintendent Houtzdale SCI*, 651 Fed. Appx. 139, 142 (3d Cir. 2016) (concluding that an inmate's § 1983 claim seeking money damages for lost opportunities to file habeas petitions was barred by *Heck* because the action implied the invalidity of his underlying convictions); *Griffin v. Balt. Police Dept.*, 804 F.3d 692, 695-96 (4th Cir. 2015) (finding that § 1983 claim predicated on alleged *Brady* violations would, if proven, "necessarily undermine the validity of Griffin's prior convictions" and thus fell "within the core of the *Heck* bar"); *Burd v. Sessler*, 702, F.3d 429, 434-35 (7th Cir. 2012) (concluding that *Heck* barred a prisoner's § 1983 access to the courts claim seeking money damages based on prison officials' denial of access to legal resources to challenge his guilty plea). Thus, because Bauer cannot show favorable termination of his underlying criminal conviction and because ruling for Bauer on his access to the courts claims would necessarily imply that his underlying state criminal conviction is invalid, Bauer's present § 1983 claim seeking damages from Glaser is not cognizable. *See Heck*, 512 U.S. at 486-87.

## 2. Qualified Immunity

42 U.S.C. § 1983 recognizes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a right protected by federal law or the United States Constitution. The doctrine of qualified immunity, however, generally shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Smith v. City of Minneapolis*, 754 F.3d 541, 545 (8th Cir. 2014) (alteration omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is an immunity from suit rather than just a defense from liability, and thus the defense is lost if a case is erroneously permitted to go to trial. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "For this reason, qualified immunity cases are somewhat unique in that 'the court should [not] deny summary judgment any time a material issue of fact remains on the [constitutional violation] claim [because to do so] could undermine the goal of qualified immunity.' " *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (alterations in original) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 671 (8th Cir. 2007)). Further, because qualified immunity is an immunity from suit, the Supreme Court has

noted that immunity questions must be resolved at the earliest possible stage of litigation, preferably prior to discovery. *Pearson*, 555 U.S. at 231-32.

To overcome qualified immunity at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). Courts have discretion to decide which of these two prongs to address first, *Pearson*, 555 U.S. at 236, but they must thoroughly analyze both prongs of the qualified immunity doctrine. *Jones*, 675 F.3d at 1162 (remanding a summary judgment order "for a more detailed qualified immunity analysis"). In order to deny a government official qualified immunity, a court must resolve both questions in the plaintiff's favor. *Hawkins v. Gage Cty.*, 759 F.3d 951, 956 (8th Cir. 2014).

### a. Whether Glaser Deprived Bauer of a Constitutional Right

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). To protect that right, prisons must provide inmates with the ability to mail their complaints and related legal correspondence. *Id.* (citing *Casey*, 518 U.S. at 351; *Bounds*, 430 U.S. at 824–28). Inmates do not, however, have a right to unlimited stamps for their legal mail. *Id.* Instead, the duty on prisons to aid inmates in sending legal mail and related legal

correspondences, "is bounded by the inmate's right of meaningful access to the courts." *Id.* (citing *Casey*, 518 U.S. at 351; *Bounds*, 430 U.S. at 828).

In *White v. Kautzky*, 494 F.3d 677 (8th Cir. 2007), the Eighth Circuit adopted the following standard for claims by inmates alleging a denial of access to the courts:

> To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

*Id.* at 680 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Casey*, 518 U.S. at 351). In order to determine whether Bauer was denied access to the courts, this court must first look at whether Glaser's alleged wrongful actions caused Bauer an actual injury. *Id.* ("Because the actual injury requirement concerns the prisoner's standing to bring a claim, and thus our jurisdiction, and because we avoid unnecessarily deciding constitutional issues, we will first consider whether White suffered any actual injury.") For Bauer to prove he suffered an actual injury, he "must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.' " *Id.* (quoting *Casey*, 518 U.S. at 353).

As noted above, Bauer has two access to the courts claims: (1) Glaser delayed sending Bauer's motion for certificate of probable cause to the South Dakota Supreme Court, and (2) Glaser delayed sending Bauer's motion to reconsider to the South Dakota Supreme Court. In support of his claims,

Bauer argues that but for Glaser requiring Bauer to execute a money transfer order to send his legal mail, both of his motions would have been timely received by the South Dakota Supreme Court. *See* Docket 41 at 3-5. Bauer further argues that even after he executed his money transfer order for each set of mailing that Glaser waited an additional day or two to give the mail to the mailroom for processing. *See id.*

Glaser responds to Bauer's arguments by arguing that Bauer cannot demonstrate that he was pursuing a nonfrivolous legal claim. *See* Docket 48 at 4. That Bauer's underlying habeas action was frivolous, according to Glaser, is evident from a reading of the thorough analyses provided by the state circuit court judge and by Magistrate Judge Duffy when reviewing Bauer's habeas actions. *Id.* at 5 (citing Docket 49-6; *Bauer v. Dooley*, 5:15-CV-5089-JLV, Docket 11, (D.S.D. August 24, 2016)). Glaser also argues that Bauer cannot show that Glaser's actions frustrated or impeded his access to the courts. *Id.* at 6. In support of this point, Glaser notes that under SDCL §§ 21-27-18.1 and 15-6-6(a), Bauer's motion for a certificate of probable cause was timely received. *Id.* at 7. Thus, Glaser contends that he "cannot be held liable for the South Dakota Supreme Court's rejection of [Bauer's] motion." *Id.* Regarding Bauer's motion for reconsideration, Glaser argues that even using the more favorable computation method proposed by Bauer, his motion for reconsideration was due by November 12, 2015, at the latest. *Id.* at 7-8. Bauer, however, did not give his motion for reconsideration to Glaser until November 16, 2015, and thus Glaser further argues that he cannot be found

to have frustrated or impeded Bauer's attempt to file his motion for reconsideration. *Id.* at 8.

At this stage in the qualified immunity analysis, the court must view the facts in the light most favorable to Bauer. *See Howard*, 570 F.3d at 988. And viewing the facts in the light most favorable to Bauer, the court concludes that Bauer cannot demonstrate that he pursued a nonfrivolous legal claim that was frustrated or impeded by Glaser's actions. Both the state circuit court and the federal district court found against Bauer when he sought habeas relief. Thus, because Bauer cannot satisfy the underlying showing necessary to support his access to the courts claims, the court finds that he has failed to demonstrate that he was deprived of a constitutional right for purposes of the qualified immunity analysis.

### b. Whether Bauer's Constitutional Right was Clearly Established

Even if Bauer was able to show that he was pursuing a constitutional right, the second prong of the qualified immunity doctrine—whether the right was "clearly established"—shields Glaser from personal liability. A right is "clearly established" if it " 'is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Rather than

defining the law generally, courts must ask "whether the violative nature of particular conduct is clearly established." *Ashcroft*, 563 U.S. at 742. The inquiry of whether a constitutional right was clearly established at the time of a defendant's alleged actions " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

Here Bauer argues that "[i]f not for the imposition of the postage charges for Bauer's legal mail, the mail would have been timely provided to the SDSP Mailroom for posting." Docket 41 at 4. In support of this point, Bauer cites the section of the DOC's Mail Policy that states that outgoing "privileged/legal mail is not required to have the postage attached." Docket 42 ¶ 10 (quoting DOC Mail Policy 1.5.D.3(IV)(6)(A)). Bauer further alleges that under the DOC's Mail Policy, the documents he submitted for mailing qualify as legal mail. *Id.* ¶ 11. Bauer thus contends that because Glaser required Bauer to execute money transfer orders prior to the processing of his legal mail, Glaser violated Bauer's clearly established constitutional right of access to the courts. *See* Docket 41 at 3-5.

The Eighth Circuit has held that "[i]nmates do not have a right . . . to unlimited stamp allowances for legal mail." *Myers*, 101 F.3d at 544; *see also Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012) ("The Constitution does not prohibit charging prisoners for essential prison services, at least in the absence of a showing that the result is a severe deprivation of a fundamental right."). And, as this court noted in its screening order, "[t]o the

extent that Bauer claims he was denied access to the courts because the prison forced him to pay postage for his legal mail, he fails to state a claim." Docket 9 at 11. Bauer cannot point to a constitutional right that requires that he be provided with unlimited postage to send his legal mail. Thus, because Bauer has not demonstrated he has a constitutional right to unlimited postage for his legal mail, the court concludes that Bauer has failed to show Glaser violated Bauer's "clearly established" constitutional rights.

## II.    Bauer's Motion to Amend

Bauer's present motion to amend seeks to restate count one of his complaint with particularity and to add a First Amendment retaliation claim against Glaser. Docket 56. Having reviewed Bauer's motion to amend, the court denies Bauer's motion because the proposed amendments are futile. First, Bauer's attempt to restate former count one is futile because there is no need for Bauer to restate claims that are already plausibly pleaded. *See* Docket 9 at 9-11 (analyzing Bauer's access to the courts claims and concluding that Bauer's complaint stated a plausible claim of an alleged denial of access to the courts). Second, as is described in greater detail below, after reviewing Bauer's proposed retaliation claim, the court concludes that Bauer's proposed retaliation claim is also futile because Bauer has failed to demonstrate that Glaser committed an adverse action that would "chill" a reasonable person from continuing to file grievances.

"The right to be free from retaliation for availing one's self of the prison grievance process has been clearly established in [the Eighth Circuit] for more

than twenty years." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449–50 (8th Cir. 2010)). In order for Bauer to allege a First Amendment retaliation claim regarding the SDSP's grievance system, he must show that " '(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.' " *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). The retaliatory conduct alleged by Bauer does not itself need to be a constitutional violation because "the violation is acting in retaliation for 'the exercise of a constitutionally protected right.' " *Id.* (quoting *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001)).

Here, Bauer's proposed retaliation claim alleges that Glaser acted "intentionally, with malice and forethought, taking retaliatory action against [Bauer] through machination, with the intent to thwart [Bauer's] access to seek administrative remedy for his grievances in an effort to deprive, and continue to deprive, [Bauer] of his right to petition." Docket 56-1 ¶ 49. As it relates to the first prong, construing Bauer's allegations liberally, Bauer alleges that Glaser "tossed" Bauer's Request for Administrative Remedy #11881 (AR #11881) in order to hide the request from Unit Manager Bieber because AR #11881 criticized Glaser's acts of delaying delivery of Bauer's legal mail to him.[5]

---

[5] Although it is not clear from the record whether anyone at the SDSP responded to AR #11881, because the court is liberally construing Bauer's

*Id.* ¶ 37. Bauer also alleges that for this same reason, Glaser intentionally failed to respond to Bauer's November 11, 2015 kite form that requested an update regarding the status of AR #11881.[6] *Id.* Thus, taking Bauer's allegations as true, the allegations clearly satisfy the first prong of a First Amendment retaliation claim because "[t]he filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

For Bauer to satisfy the second prong of a First Amendment retaliation claim, he must demonstrate not only that Glaser took an adverse action toward him but also that Glaser's adverse action " 'would chill a person of ordinary firmness from continuing in the activity[.]' " *Spencer*, 738 F.3d at 911 (quoting *Revels*, 382 F.3d at 876); *see also Lewis*, 486 F.3d at 1029 (holding in a First Amendment retaliation claim that the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process). " 'The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment.' " *Santiago*, 707 F.3d at 992 (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003)). This is an objective test that looks

---

proposed amended complaint, the court will assume that AR #11881 was never responded to by staff at the SDSP.

[6] According to Bauer's proposed amended complaint, a kite form is an internal prison form on 5.5 x 8.5 sized paper used for internal correspondences between inmates and SDSP staff. Docket 56-1 ¶ 37.

at whether a reasonable prisoner's actions would be chilled by an official's alleged adverse actions. *See id.* (citing *Garcia*, 348 F.3d at 729).

Here, Bauer has failed to allege facts to show that a reasonable prisoner of ordinary firmness would have been "chilled" from using the grievance procedure if that prisoner were in Bauer's position.[7] *Id.* Although the ordinary firmness determination is normally a question for a jury, *see id.*, it is clear here Bauer has failed to show that a reasonable person would have been "chilled" by Glaser's actions. In fact, as demonstrated by Bauer's proposed amended complaint, it is clear that Bauer himself was not "chilled" by Glaser's actions because after getting no response to AR #11881, Bauer filed Informal Resolution Request #12350 (IRR #12350) that again alleged that Glaser had delayed Bauer's legal mail to the South Dakota Supreme Court. *Compare* Docket 56-7 and 56-8 (stating the facts underlying AR #11881, namely that Glaser delayed Bauer's legal mail) *with* Docket 56-14 at 2 (reciting the facts related to IRR #12350, which included allegations that Glaser delayed Bauer's legal mail). Thus, even assuming that Glaser's actions in the processing of either AR #11881 or IRR #12350 constituted an "adverse action,"[8] it is clear

---

[7] For purposes of this analysis, the court assumes that Bauer's allegations that Glaser tossed AR #11881 and failed to respond to Bauer's November 11, 2015 kite, which requested a status update on AR #11881, Docket 56-1 ¶ 38, sufficiently alleges that Glaser took an adverse action toward Bauer.

[8] In assuming that Glaser committed an adverse action toward Bauer, the court notes that under the DOC policy attached to Bauer's proposed amended complaint, Glaser would have been precluded from investigating or responding to Bauer's complaints about Glaser. *See* Docket 56-16 at 2 (copy of DOC Administrative Remedy for Inmates Policy 1.3.E.2(IV)(1)(E)). Thus, it is highly unlikely that Glaser was actually involved in investigating or responding to

from Bauer's proposed amended complaint and the related attachments that Bauer himself was not "chilled" by Glaser's acts. Thus, because Bauer has failed to demonstrate that a reasonable prisoner of ordinary firmness would have been "chilled" by Glaser's actions, Bauer's motion to amend his complaint to add a First Amendment retaliation claim is denied because the claim is futile.[9]

## CONCLUSION

To the extent Bauer seeks to hold Glaser liable in his official capacity for money damages, Glaser is protected by sovereign immunity and is entitled to judgment as a matter of law on that claim. The court finds that Bauer's § 1983 claim seeking damages from Glaser in his individual capacity is not cognizable under *Heck*, 512 U.S. at 486-87, because Bauer cannot show favorable termination of his underlying state court criminal conviction and because ruling for Bauer on his access to the courts claims would necessarily imply that his underlying state criminal conviction is invalid. Further, even if Bauer's individual capacity claim against Glaser is not *Heck* barred, the court concludes that Glaser is entitled to qualified immunity on that claim. Thus, the

---

Bauer's complaints. The court also notes that Bauer's proposed amended complaint fails to allege that Glaser either personally processed or was involved in responding to IRR #12350. *See* Docket 56-1 ¶¶ 38-46.

[9] Given the court's conclusion that Bauer's proposed amended complaint is futile because it fails to allege facts sufficient to support the second element of a First Amendment retaliation claim, the court will not address whether Bauer stated sufficient facts to support the third element of a First Amendment retaliation claim—whether the alleged adverse action was motivated in part by the exercise of a protected activity.

court grants Glaser's motion for summary judgment and denies Bauer's motion for summary judgment as moot.

The court also denies Bauer's motion to amend because the amendments are futile. First, Bauer does not need to restate claims that are already plausibly pleaded. And second, Bauer's proposed First Amendment retaliation claim is futile because Bauer has failed to demonstrate that Glaser committed an adverse action that would "chill" a reasonable person from continuing to file grievances. Further, to the extent Bauer filed his proposed amended complaint in order to respond to Glaser's motion for summary judgment, the court considered the proposed amended complaint when granting Glaser's motion for summary judgment.

Thus, it is ORDERED:

1. Glaser's motion for summary judgment (Docket 47) is granted.

2. Bauer's motion for summary judgment (Docket 40) is denied as moot.

3. Bauer's motion to amend (Docket 56) is denied.

Dated March 29, 2018.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE